AMOS HOWES *vs.* EPHRAIM MAUNEY. *et al.*

1. When Judges exchange circuits, the instant one of them enters the district, the Courts of which first commence—at the same instant, the resident Judge of such district becomes Judge of the other, and, in such case it is the duty of of the Judge, of the district first entered, to repair to the other district, so as to reach it at the time his own is reached, by the other Judge.

2. It is erroneous, in an action brought to prevent irreparable injury by a sale of land, to try the question of title on affidavits, and therefore, where, from the affidavits on both sides, there is reasonable ground to support the averment of the plaintiff, that the vendors (the defendants) are not able to make good title, an order enjoining a mortgagee, under a mortgage to secure the purchase-money, will not be vacated, until the question of title has been tried in the usual way.

3. Where land is sold by deed and the vendee immediately re-conveys by mortgage, to secure the payment of the purchase-money, enters into possession and makes valuable improvements, and obtains an injunction to restrain a threatened sale under the terms of the mortgage, and the order is continued to the hearing, *held*, that the defendants might move for a receiver.

This was a motion to vacate an order of injunction, heretofore obtained by the plaintiff, and heard by His Honor Judge Cannon, at Salisbury, on the 2d day of September, 1871.

The action, in which the order was made, was pending in the Superior Court of Rowan. By leave of the Governor,

Judges Cloud and Cannon had exchanged Circuits, and Judge Cloud was holding Courts in the 12th, on the 2d September, 1871. The 8th District Courts commenced on Monday the 5th day of September, and the plaintiff objected here, that Judge Cannon had no jurisdiction over business in the 8th, until the 5th day of September, 1871.

This matter was argued and determined as preliminary to the main point, and a separate opinion was delivered, but, for convenience, the two opinions are conjoined.

The case below was heard upon affidavits on both sides. It appeared from the affidavits on both sides, that prior to the 9th of July, 1855, the defendants, the two Holmes and two Mauneys, were seized in fee of the premises, (a mining property); that, having before that time, sold the same to one Isaac H. Smith, acting for and on behalf of, the Gold Hill Mining Company, a corporation created under the laws of New York, and of which said Smith was President, and, having received a full fee simple price therefor, on that day, they executed a deed, whereby they conveyed the same to said Smith, his successors and assigns, in trust for the said Company, whereby, but a life estate in the legal title passed to said Smith, and a legal reversion remained in the bargainors. Smith died in 1858, whereby, the whole legal title became vested in the bargainors.

In 1860 and 1861, attachments were sued out against said Company, and were levied on the premises as its property. At August Term 1861, judgments were obtained on these attachments, and the premises were sold by the Sheriff on the 6th day of January 1862, by virtue of writs of *ven. ex,* issued to enforce the same. At this sale, the defendant Roberts became the purchaser, and having taken a Sheriff's deed therefor on the next day, 7th of Jan'y, 1862, conveyed shares therein to the other defendants. In April 1866, the plaintiff as agent for a corporation, created in New York, in 1865, called the N. C., Ore Dressing Company, made an executory con-

tract with defendants to purchase the premises at the price of $25,000, and took a bond for title ; on this purchase, some $15,000 having been paid, and the balance being in arrear, the defendants brought a civil action, in the nature of a bill for foreclosure, in the Superior Court of Rowan, and it seems that that suit was compromised.  At any rate Howes, on the 4th day of May, 1870, purchased from the defendants, surrendering the bond for title, (taking up the remaining notes given on that purchase,) for the price of $     , took a deed with covenants of seizin, against incumbrances, of good right to convey, and in one of them a restricted covenant of quiet enjoyment, and, at the same time executed a mortgage with a power of sale to secure the purchase money, and having, as he alleged, discovered that the title was defective, failed to pay instalments as they fell due, and the mortgagees, (the defendants) advertised a sale of the premises under the mortgage.

In 1866, a bill was filed, by one Brockleman against the defendants and the Gold Hill Mining Company, alleging indebtedness of the Company to him, by a judgment, which after execution returned *nulla bona*, remained unsatisfied, and setting forth the equitable title of the Company to the premises, as above stated, and praying a sale thereof to satisfy his judgment.   That a sale was ordered to be made by a commissioner named, but in the order of sale it was expressed, that the title was to be reserved, until twenty-five thousand dollars was paid to the defendants, (other than the Company,) under the executory contract with Howes as agent for the N. C. O. D. Co.; a sale was made and confirmed, and an unconditional order was made, directing title to be made to the purchaser, on payment of his bid, and that said bid had been paid, but the commissioner had refused to make title.

The plaintiff averred a general knowledge of the attachment suit and of the bill in equity, but, that he was ignorant of the effect of the war on the rights of the Gold Hill Mining Company, and had only, recently, before the exhibition of his

affidavit, come to the knowledge of the utter worthlessness of the defendants' title, viewed in the light of a late decision of the Supreme Court of the United States. The defendants swore, that plaintiff bought with full knowledge, of the defects in their title. M. L. Holmes and E. Mauney, filed separate affidavits—Holmes swearing that the purchaser was the agent of plaintiff, and Mauney, that he was agent of N. C. O. D. Co., and the plaintiff, and that the amount of the bid was furnished him by the President of the last named Company, and a great deal more touching the knowledge of the plaintiff, which it is considered needless to state, in view of the point decided by the Court.

His Honor, Judge Cannon, vacated the order of injunction heretofore granted, and, the plaintiff appealed.

*Fowle* and *W. H. Bailey* for the appellant.
*Blackmer & McCorkle* and *Phillips & Merrimon contra.*

PEARSON, C. J.  The instant Judge Cloud entered the 12th District, he was the Judge of that District. At the same instant, Judge Cannon, was Judge of the 8th District ; and it was his duty to have left home, in reasonable time, (by communication with Judge Cloud) to reach the 8th, at the time Judge Cloud reached the 12th District. The circuit of the 12th District, begins a month sooner, than the circuit of District 8th, and the circuit of District 8 does not end, until a month after the end of District 12. So, it was the duty of Judge Cloud, to remain in District 12, until within a reasonable time, he could reach District 8, about the time that Judge Cannon re-entered District 12.

This construction is necessary, to avoid the absurdity of having two Judges in one District, at the same time, and no Judge in the other. When Judges choose to exchange Districts, they submit to the maxim " *privatum incommodum, bono publico pensatur.*" *Broom's* legal maxims 6.

Every Judge shall reside in his District. The Judges may

exchange Districts, (not circuits) with consent of the Governor. *Constitution, Art. 4, sec. 14:*

A literal construction, would require an absolute exchange of Districts, and here the Governor is required to sanction the exchange. A liberal construction, will allow an exchange of circuits, that is, an exchange of Districts, for one circuit ; but to justify this construction, " the ends must be made to meet," and the absurdity of having two Judges in District 12, at the beginning, and no Judge in District 8, for one month, and of having two Judges in District 8, at the end; and no Judge in District 12, for one month, must be avoided. Qualified in this manner, an exchange of circuits may be made, and the legal consequences will be, as above stated. So, Judge Cannon, in our case, was Judge of the 8th District, when he made the order.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

How this case will present itself at the hearing, for final action, we cannot anticipate; it is enough now to see, there is reasonable ground, to support the averment, that the vendors, (the defendants,) are not able to make a good title, under the title derived from Roberts. This puts the defendants up the original title, before the deed to Smith—at whose death, the Gold Hill Mining Company, had not an equitable estate, or trust estate, subject to execution ; but a right of action in equity, to have the deed reformed ; or to treat it as evidence in writing, within the statute of frauds, of a contract to convey land, upon the payment of the purchase money. This equity belongs to the Gold Hill Mining Company. We are not able to see, on affidavits, where the title is; we are satisfied, that the improvements put on the land, make it ample security, for the debt claimed.

Judgment below reversed.

The defendants will be enjoined from exercising this power of sale, but the plaintiff must pay into the office of the clerk, the net monthly proceeds, of the operations of the "Ore Dressing Co.,

to keep down the interest, or as it may be, to extinguish a part of the principal of the debt, which constitutes the original purchase money. This matter is confused by the pleadings—how did the Gold Mining Co., pass off, and the Ore Dressing Co., take its place?

The injunction will be continued, with leave for the defendants to apply for a receiver, in order to have the net monthly proceeds of the mine applied to keep down interest, &c.

As the matter is heard, on affidavits, we, of course, do not touch upon the merits. We only say, the matter as it now appears, is not "mere sham," but is something fit to be considered of. Should the defendants be allowed to sell the premises, that would put an end to the matter, this we are unwilling to do, upon affidavits.